IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

ALONZO CORTEZ JOHNSON,            )
                                  )
                   Petitioner,    )
                                  )
v.                                )
                                  )  Case No. 16-CV-433-JED-FHM
JIMMY MARTIN, Warden,[1]          )
                                  )
                   Respondent.    )

## OPINION AND ORDER

Before the Court is Alonzo Cortez Johnson's 28 U.S.C. § 2254 habeas corpus petition (Doc. 1). Petitioner challenges his convictions for first degree murder and conspiracy in Tulsa County District Court, Case No. CF-2009-2738. For the reasons below, the Court will deny the petition.

**I. Background**

This case stems from a murder-for-hire scheme involving five defendants. (Doc. 8 at 10-12).[2] The original conflict began when victim Neal Sweeney, a fuel supplier, obtained a default judgment against convenience-store owner Mohammed Aziz. (*Id.* at 10-11). Aziz developed an "intense hatred" toward Sweeney and approached Allen Shields to locate a hitman. (*Id.* at 11). Shields referred the matter to his brother Fred, who set a price of $10,000 for the murder. (Doc. 13-27 at 172). Fred Shields also acted as an intermediary, recruiting Petitioner (his cousin) and a man named Terrico Bethel. (*Id.* at 172-184; *see also* Doc. 13-2 at 44-46). Petitioner purportedly obtained the getaway car and helped coordinate with Aziz, while Bethel shot the victim. (*Id.*). Fred

---

[1] Petitioner is incarcerated at North Fork Correctional Center (NFCC) in Sayre, Oklahoma. (Doc. 21 at 1). Jimmy Martin, the warden of NFCC, is therefore substituted in place of Joe Allbaugh as party respondent. *See* Habeas Corpus Rule 2(a). The Clerk of Court shall note the substitution on the record.

[2] The Court finds Petitioner's brief (Doc. 8) accurately sets forth certain non-controversial background facts.

Shields was eventually apprehended on a different crime and exposed the conspiracy in an effort to make a deal. (Doc. 8 at 12).

The State charged Petitioner with conspiracy to commit first degree murder (Count 4) and first-degree murder (Count 10). (Doc. 13-42 at 100; *see also* Doc. 8 at 22). The other men faced similar charges. (Doc. 13-42 at 99-102). A jury convicted Fred Shields and Terrico Bethel of, inter alia, first degree murder, and both received life sentences. (Doc. 8 at 8, n. 2). Allen Shields faced a conspiracy charge but died by suicide during a pretrial hostage situation. (Doc. 13-27 at 72). Mohammad Aziz pled guilty to solicitation of murder and was sentenced to 35 years imprisonment. (Doc. 8 at 8, n. 2).

Petitioner's jury trial commenced on December 3, 2012. (Doc. 13-24). Defense counsel argued his involvement was minimal or nonexistent, and his co-conspirators' testimony was unreliable. After a multi-week trial, the jury convicted Petitioner of all charges. (Doc. 12-4 at 1). The state court sentenced him to life imprisonment on each count, with the sentences running consecutively. (*Id.*).

Petitioner perfected a direct appeal to the Oklahoma Court of Criminal Appeals (OCCA). By a summary opinion entered July 17, 2014, the OCCA affirmed the conviction and sentence. (Doc. 12-4). Petitioner then sought post-conviction relief, which the OCCA also denied. (Doc. 12-6; *see also* Doc. 12-7). Petitioner filed the instant § 2254 petition (Doc. 1) on July 5, 2016. He identifies seven grounds of error:

(Ground 1): The prosecutor used peremptory challenges to exclude racial minorities from the jury;
(Ground 2): The use of recorded statements violated the Confrontation Clause;

(Ground 3): The evidence was insufficient to sustain a conviction;

(Ground 4): Gruesome photographs and testimony rendered the trial unfair;

(Ground 5): Juror misconduct rendered the trial unfair;

(Ground 6): The evidentiary rulings violated Petitioner's right to present a defense; and

(Ground 7): Cumulative error rendered the trial unfair.

(Doc. 8 at 2-4).

Respondent filed an answer (Doc. 12), along with relevant portions of the state court record (Doc. 13). Respondent concedes, and the Court finds, that Petitioner exhausted his state remedies and the Petition is timely. *See* 28 U.S.C. §§ 2244(d)(1); 2254(b)(1)(A). Petitioner filed a reply brief (Doc. 17) on January 24, 2017, and the matter is ready for a merits review.

## II. Discussion

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs this Court's review of petitioner's habeas claims. *See* 28 U.S.C. § 2254. Relief is only available under the AEDPA where the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, because the OCCA already adjudicated petitioner's claims, this Court may not grant habeas relief unless he demonstrates that the OCCA's ruling: (1) "resulted in a decision that was contrary to . . . clearly established Federal law as determined by [the] Supreme Court of the United States," 28 U.S.C. § 2254(d)(1);[3] (2) "resulted in a decision that . . . involved an unreasonable application of clearly established Federal law," *id.*; or (3) "resulted in a decision

---

[3] As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)); *see also House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008) (explaining that "Supreme Court holdings—the exclusive touchstone for clearly established federal law—must be construed narrowly and consist only of something akin to on-point holdings").

that was based on an unreasonable determination of the facts" in light of the record presented to the state court, *id.* at § 2254(d)(2).

"To determine whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Cullen v. Pinholster,* 563 U.S. 170, 182 (2011) (alterations in original) (quotations omitted). When the state court's decision "identifies the correct governing legal principle in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case." *Id.* (quotations omitted). Significantly, an "unreasonable application of" clearly established federal law under § 2254(d)(1) "must be objectively unreasonable, not merely wrong." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quotations omitted). "[E]ven clear error will not suffice." *Id.* Likewise, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Court must presume the correctness of the OCCA's factual findings unless petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Essentially, the standards set forth in § 2254 are designed to be "difficult to meet," *Harrington v. Richter,* 562 U.S. 86, 102 (2011), and require federal habeas courts to give state court decisions the "benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). A state prisoner ultimately "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

### A. Peremptory Challenges (Ground 1)

Petitioner first argues the prosecutor systematically used the State's peremptory challenges to exclude racial minorities from the jury. (Doc. 8 at 13-14). He contends the prosecutor inappropriately challenged prospective minority jurors Dickens, De Wassom, Carranza, Martinez, and Tawil. Petitioner further argues the purported race-neutral explanations for those challenges were pretextual. As support, he cites the state court's refusal to excuse juror Williams, which would have "effectively eliminate[d] all the African-Americans" from the panel. (*Id.* at 14).

Petitioner raised this argument on direct appeal as an equal protection claim under *Batson v. Kentucky*, 476 U.S. 79 (1986). (Doc. 12-1 at 14). "*Batson* held that the Fourteenth Amendment's Equal Protection Clause prohibits the prosecution's use of peremptory challenges to exclude potential jurors on the basis of their race." *Saiz v. Ortiz*, 392 F.3d 1166, 1171 (10th Cir. 2004). A trial court must apply a three-step burden-shifting framework to assess a Batson challenge:

> First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Although the prosecutor must present a comprehensible reason, the second step of this process does not demand an explanation that is persuasive, or even plausible; so long as the reason is not inherently discriminatory, it suffices. Third, the court must determine whether the defendant has carried his burden of proving purposeful discrimination. This final step involves evaluating the persuasiveness of the justification proffered by the prosecutor, but the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.

*Rice v. Collins*, 546 U.S. 333, 338 (2006) (internal citations omitted).

The OCCA considered *Batson* and found that Petitioner failed to establish systematic or purposeful discrimination by the State. (Doc. 12-4 at 3). Specifically, the OCCA agreed that "the State's explanations for excusing each minority jurors were legitimate race-neutral reasons." (*Id.*). Citing *Powers v. Ohio*, 499 U.S. 400, 404 (1991), the OCCA also noted the "trial court erred to the

detriment of the State when it refused to … excuse an African-American because it would have left the jury without any African-Americans." (*Id.*); *see also Powers,* 499 U.S. at 404 ("Although a defendant has no right to a 'petit jury composed in whole or in part of persons of [his] own race, … he … does have the right to be tried by a jury whose members are selected by nondiscriminatory criteria").

Because the OCCA applied *Batson*, relief is only available if it "was unreasonable to credit the prosecutor's race-neutral explanations for the *Batson* challenge." *Rice*, 546 U.S. at 338. Habeas courts "must grant the trial courts considerable leeway in applying *Batson*," *Id.* at 343-44 (Breyer, J., concurring), and "defer to the state trial judge's finding of no racial motivation in the 'absence of exceptional circumstances.'" *Black v. Workman*, 682 F.3d 880, 897 (10th Cir. 2012) (quoting *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008)).

Having reviewed the record, the Court finds no exceptional circumstances in this case. The jurors at issue are Dickens, De Wassom, Carranza, Martinez, and Tawil. Dickens is an African-American liberal arts professor who holds a Ph.D. (Doc. 13-24 at 31). The prosecutor explained that in his experience, liberal arts professors are too exacting and liberal. (Doc. 13-25 at 180). The prosecutor went on to excuse De Wassom, Carranza, and Tawil without an immediate objection by the defense. (*Id.* at 179-181). When the prosecutor excused Martinez, defense counsel argued there was a pattern of striking minority jurors. (*Id.* at 181). The state court disagreed, noting that Martinez was hardly involved and Carranza and De Wassom had difficulty with English. (*Id.* at 181-182). The record confirms Carranza and De Wassom spoke English as a second language and that Martinez did not want to be on the jury. (Doc. 13-25 at 11; 44-45; 50). Martinez also stated her brother should not be in jail for driving while intoxicated. (*Id.* at 45). As to Tawil, there was

6

no specific objection to, or explanation for, his excusal. To the extent the *Batson* inquiry includes Tawil, the record reflects his former attending physician was also a prospective juror, and the prosecutor expressed concern about them participating together. (Doc. 13-25 at 17-18).

Petitioner offers no evidence to controvert this record, aside from noting Dickens was related to police officers and the state court refused to excuse the last African-American juror. This information does not constitute "clear and convincing" evidence of racial motivation. *See, e.g., Foster v. Chatman*, 136 S. Ct. 1737, 1748 (2016) (finding clear evidence of racial motivation where the prosecutor's handwritten notes labelled African-American jurors as "B-1, B-2, B-3," etc.); *Miller-El v. Dretke*, 545 U.S. 231, 253 (2005) (racial motivation existed where prosecutor reshuffled a deck of cards to avoid minorities and posed different questions to people of different ethnicities). Moreover, the Court is not convinced the informal nature of the exchange between defense counsel and the state court justifies relief. Defense counsel objected generally to a pattern, rather than any particular strike. The state court disagreed there was a pattern, and defense counsel dropped the matter without seeking further explanations. (Doc. 13-25 at 179-181). On this record, the Court cannot disturb the OCCA's application of *Batson*, and Ground 1 fails.

**B. Confrontation Clause (Ground 2)**

Petitioner raises a Confrontation Clause claim based on the admission of Terrico Bethel's recorded statements and preliminary hearing testimony by Allen Shields (deceased). (Doc. 8 at 18). Bethel made the statements during a recorded conversation with his cell mate. The recording was redacted to exclude references to Petitioner. However, Petitioner contends he was still implicated when Bethel stated: "[Fred Shields'] kin folk paid me." (*Id.* at 19). Petitioner further argues he did not have a meaningful opportunity to cross-examine Allen Shields at the preliminary

7

hearing.  (*Id.* at 20-21).

The Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. amend. VI.  Admitting an incriminating statement by a codefendant may violate the Confrontation Clause of the Sixth Amendment.  *See Bruton v. United States*, 391 U.S. 123, 131–32 (1968).  However, the challenged statement must be "'testimonial' in nature, for only statements of this sort cause the declarant to be a 'witness' within the meaning of the Confrontation Clause."  *Davis v. Washington*, 547 U.S. 813, 821 (2006).  If the evidence is testimonial, the Confrontation Clause requires that the declarant be unavailable and that defendant had a prior opportunity for cross-examination.  *See Crawford v. Washington*, 541 U.S. 36, 53–54 (2004).

   1. Allen Shields (Deceased)

The parties agree that Allen Shields was unavailable and his statements are testimonial.  However, Petitioner contends he did not have a meaningful opportunity to cross-examine Shields during the preliminary hearing.  At the time, Petitioner was only charged with conspiracy to commit murder, rather than murder.  (Doc. 8 at 21).  He also argues he discovered certain details about Allen Shield's plea deal, including the allowance of conjugal visits, after the preliminary hearing.  (*Id.* at 21-22).  The OCCA considered and rejected these arguments under *Crawford,* reasoning that "the discovery of potentially new grounds for impeachment … did not render the defense's prior opportunity to cross-examine Shields constitutionally inadequate."  (Doc. 12-4 at 8-9).

This ruling comports with the record and federal law.  The right to confrontation affords the opportunity for effective cross-examination, but does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  *Delaware v. Van*

8

*Arsdall*, 475 U.S. 673, 679 (1986). "The touchstone for whether the Confrontation Clause has been satisfied is whether the jury had sufficient information to make a discriminating appraisal of the witness' motives and bias." *United States v. Mullins*, 613 F.3d 1273, 1283 (10th Cir. 2010).

Here, four different defense attorneys cross-examined Allen Shields at length. (Doc. 13-2 at 86-184). Petitioner's counsel questioned him about: (1) the plea deal, under which he would receive a ten-year suspended sentence for testimony that resulted in a conviction; (2) his inconsistent statements to police; (3) his other crimes involving drug trafficking, kidnapping, and assault; and (4) his lack of personal knowledge about Petitioner's involvement in the crime. (*Id.* at 112-141). The jury therefore had ample information to evaluate Allen Shields' motives and bias, even if they did not know he was also allowed conjugal visits or other jailhouse perks. Moreover, the Court is not convinced the later-added murder charge required a new round of cross-exanimation. The Confrontation Clause "does not require that the defendant have a similar motive [for cross-examination] at the prior proceeding." *United States v. Hargrove*, 382 Fed. App'x 765, 778 (10th Cir. 2010). And, in any event, both charges arose from the same nucleus of facts. The Court finds no constitutional violation based on Allen Shields' preliminary hearing testimony.

2. Terrico Bethel

As to Bethel, the dispute turns on whether the statements are testimonial. Applying *Davis* and *Bruton*, the OCCA suggested they were not, and therefore not subject to the Confrontation Clause. (Doc. 12-4 at 6). The OCCA also analyzed state evidentiary rules and determined the jailhouse recording met the hearsay exception for statements against pecuniary interest (OKLA. STAT. tit. 21, § 12-2804(B)(3)). (*Id.*). Having reviewed the record, the Court agrees. The Tenth Circuit has held that a "recorded statement to [a confidential informant], known to [the speaker]

only as a fellow inmate, is unquestionably nontestimonial." *United States v. Smalls*, 605 F.3d 765, 778 (10th Cir. 2010). *See also Davis v. Washington,* 547 U.S. 813, 825 (2006) (statements made unwittingly to a Government informant are "clearly nontestimonial"). The OCCA therefore correctly determined Bethel's statements to his cell mate do not implicate the Confrontation Clause. *See Michigan v. Bryant*, 562 U.S. 344, 354 (2011) (noting Supreme Court precedent "limited the Confrontation Clause's reach to testimonial statements").

As to the hearsay analysis, federal courts "may not provide habeas corpus relief on the basis of state court evidentiary rulings unless they rendered the trial … fundamentally unfair." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002). There is no evidence of unfairness in this case. Bethel's statements were admitted under the hearsay exception for statements against penal interest, which is nearly identical Fed. R. Evid. 804(b)(3). As the OCCA pointed out, "Bethel confessed the conspiracy and murder to [his cell mate]," and "the State redacted all of Bethel's statements that expressly referenced [Petitioner]." (Doc. 12-4 at 6). Further, Petitioner's own counsel refused to redact Bethel's statement about receiving payment from Fred Shield's "kin folk." During an *in camera* conference, counsel stated "I don't want that out;" it appears he planned to argue Bethel was discussing different relatives. (Doc. 13-26 at 139). Under these circumstances, the Court cannot find the trial was fundamentally unfair, and Ground 2 fails.

### C. Exclusion of Defense Evidence (Ground 6)

The Court will next address Ground 6, which also pertains to the recorded conversation between Bethel and his cellmate. (Doc. 8 at 33). Petitioner now contends that excluding certain statements by Bethel violated his right to present a defense. *(Id.)*. He also argues the state court impermissibly limited his cross-examination of a police witness. (*Id.* at 35).

"The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). However, this right is not absolute; "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006)); *see also Chambers v. Mississippi,* 410 U.S. 284, 295 (1973) (defendant's rights to cross-examine witnesses are "not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process"). As *Holmes* explained: "While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." 547 U.S. at 326.

The challenged statement by Bethel described a house in Tulsa "belong[ing] to a person he was dealing with…" (Doc. 8 at 33; *see also* Doc. 12-1 at 54). Petitioner believes the statement is exculpatory because he (Petitioner) lived in Broken Arrow, not Tulsa. (Doc. 8 at 33). Applying *Crane,* the OCCA explained:

> [Petitioner] sought to have his name redacted but to leave in Bethel's directions to [Petitioner's] house, which was in-fact Allen Shields' home. The trial court gave [Petitioner] the option of leaving in both his name and Bethel's erroneous conclusion as to [Petitioner's] home or redacting both the name and Bethel's erroneous conclusion. [Petitioner] chose to have both his name and the erroneous conclusion redacted. We find that [Petitioner's] request to redact his name but leave the erroneous conclusion would have been confusing, misleading, and not assure the fair and reliable ascertainment of guilt or innocence.

(Doc. 12-4 at 14-15). This ruling is well supported by the record. Defense counsel admitted he knew Bethel was describing Allen Shield's house in Tulsa. (Doc. 13-26 at 434). Therefore, the statement would likely support the evidence that the men met and conspired at Allen Shields' home.

(Doc. 13-2 at 42). To the extent defense counsel planned to suggest the house belonged to some unknown third party, who was not associated with Petitioner, the Court agrees the evidence would be misleading.

Petitioner's next argument pertains to the cross-examination of Detective Regalado. (Doc. 8 at 35). Petitioner argues he should have been permitted to admit Regalado's police report to show that Aziz never mentioned Petitioner in Aziz's initial interview. (*Id.*). The OCCA also rejected this claim, finding "[Petitioner] never sought to admit the … report into evidence." (Doc. 12-5 at 15). The OCCA further suggested the evidence would be cumulative. (*Id.*). The Court agrees. Both Regalado and Aziz admitted that Aziz did not implicate Petitioner until years after the crime. (Doc. 13-27 at 128-129; 199). Petitioner has not demonstrated the OCCA misapplied the facts or law, and Ground 6 fails.

### D. Insufficient Evidence (Ground 3)

In Ground 3, Petitioner contends there was insufficient evidence to sustain his convictions for murder and conspiracy. (Doc. 8 at 23). He contends the State failed to prove he actually participated in the crime, and there is no physical evidence linking him to the shooting. (*Id.* at 23-25). Petitioner also points out that most co-conspirators were "flipped" by the State. (*Id.*). The OCCA rejected these arguments, finding "any rational trier of fact could have found the essential elements of the charged crimes beyond a reasonable doubt." (Doc. 12-4 at 10). Specifically, the OCCA found sufficient evidence to conclude "[Petitioner] became a party to the conspiracy to murder the victim, committed an overt act in furtherance of that agreement, and was criminally responsible for the victim's unlawful death." (*Id.*).

The OCCA applied the federal due process standard, which requires the State to prove every

element of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). On federal habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam). As the Supreme Court explained:

> First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Id.* The Court looks to state law to determine the substantive elements of the crime, "but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman*, 566 U.S. at 655.

"The elements of a conspiracy [to commit murder] are (1) an agreement to commit the [murder], and (2) an overt act by one or more of the parties in furtherance of the conspiracy, or to effect its purpose." *McGee v. State*, 127 P.3d 1147, 1149 (Okla. Crim. App. 2005) (citing OKLA. STAT. tit. 21, § 421). To obtain the murder conviction, the State had to show: (1) the unlawful death of a human; (2) caused by the defendant; and (3) with malice aforethought. *See* OKLA. CRIM. JURY INSTRUCTION NOS. 4-61; OKLA. STAT. tit. 21, § 701.7(A). In Oklahoma, persons who aid and abet in the commission of a crime are "equally culpable with other principles." *Conover v. State*,

933 P.2d 904, 910 (Okla. Crim. App. 1991), *abrogated on other grounds by Bosse v. Oklahoma*, 137 S. Ct. 1 (2016); *see also* OKLA. STAT. tit. 21, § 172. This includes "procur[ing] the crime to be done" and "advis[ing] or encourag[ing] the commission of the crime." *Glossip v. State*, 157 P.3d 143, 151 (Okla. Crim. App. 2007).

Based on the record, the Court agrees any rational juror could have found the elements of each crime. Aziz - who ordered the murder - testified that Fred Shields accepted the job via his brother Allen Shields and set a price of $10,000. (Doc. 13-27 at 172). According to Allen Shields, he met Fred Shields and Petitioner at his (Allen's) home in the days before the murder. (Doc. 13-2 at 42). Allen testified Fred and Petitioner left the house to travel to Muskogee, and Aziz similarly recalled hearing that Fred was going to steal a getaway van from Muskogee. (*Id.* at 44-45; *see also* Doc. 13-27 at 173). Charles Billingsley, who was not a defendant in the case, testified that he helped Petitioner take a white Ford van from the detail shop next to Billingsley's business. (Doc. 13-28 at 23-32). On the morning of the murder, Allen Shields recalled that Petitioner came to his home. (Doc. 13-2 at 47). According to Allen Shields, Petitioner wanted him to ask Aziz for the money so the passenger riding with Petitioner (Terrico Bethel) could "get the murder done." (Doc. 13-2 at 49-50). That same day, Aziz recalled Petitioner knocking on the window of his business and saying "watch the news." (Doc. 13-27 at 175). Petitioner never returned the white van, but Billingsley recalls seeing it on television in connection with the murder. (Doc. 13-28 at 40). Allen Shields testified that after the murder, he collected the first $5,000 from Aziz and gave it to Petitioner. (Doc. 13-2 at 65-66). These facts are supported by phone records showing various calls between the co-conspirators in the time leading up to the murder. (Docs. 13-34, 13-35).

Petitioner attempts to overcome this evidence by pointing out: (1) Billingsley never knew

what the van was for; (2) Bethel was the actual shooter; (3) there was no evidence regarding the content of various calls and texts between the men; (4) Allen Shields and Aziz testified pursuant to plea deals; and (5) there was no physical evidence linking Petitioner to the murder. (Doc. 8 at 23-26). "[T]he focus of a *Jackson* inquiry is not on what evidence is missing from the record, but whether the evidence in the record, viewed in the light most favorable to the prosecution, is sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt." *Matthews v. Workman*, 577 F.3d 1175, 1185 (10th Cir. 2009). Here, the testimony of state witnesses and supporting phone records establish Petitioner was part of an agreement to commit murder and took various steps to procure and effect the crime. Habeas relief is unavailable on Ground 3.

**E. Crime Scene Evidence (Ground 4)**

Petitioner next argues the state court improperly admitted testimony and photographs depicting the crime scene. (Doc. 8 at 27-29). The evidence included a bloody jacket and a photograph depicting blood, tissue, and hair in the victim's office following the shooting. (*Id.*). The prosecutor also introduced testimony describing human issue, blood, and brain matter found on the walls and blinds of the victim's office. (*Id.*). In rejecting Ground 4, the OCCA found the trial court did not err in admitting "testimony and photographs depicting the crime scene and nature, extent, and location of the victim's injury." (Doc. 12-4 at 9). The opinion cited cases holding that a stipulation as to cause of death does not determine whether the probative value of a photo outweighs any prejudice. (*Id.*).

"Federal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights." *Spears v. Mullin*, 343 F.3d 1215, 1225 (10th Cir.

15

2003). "When, as here, habeas petitioners challenge the admission of [graphic] evidence as violative of the Constitution, [the Court] considers whether the admission of evidence so infected the trial with unfairness as to [violate] due process." *Id.* at 1226 (quotations omitted); *see also Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999) ("The essence of our inquiry ... is whether the admission of the photographs rendered the proceedings fundamentally unfair.").

The Tenth Circuit has rejected fundamental-unfairness arguments where: (1) the graphic evidence supports the testimony by the medical examiner; and (2) the evidence of guilt is strong. *See Wilson v. Sirmons*, 536 F.3d 1064, 1115 (10th Cir. 2008) ("The photographs, while gruesome … allowed the examiner to show where the baseball bat caused various injuries," and in any event, the "evidence at the guilt phase was particularly strong"); *Thornburg v. Mullin*, 422 F.3d 1113, 1129 (10th Cir. 2005) (denying habeas relief where photographs corroborated witness accounts and there was strong evidence of guilt); *Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999) (same). As discussed above, the State presented strong evidence of guilt. (Supra, Section D). The challenged evidence also corroborated testimony that the victim sustained a high velocity gunshot wound when a shooter entered his office, and was discovered with his head against the window. (Doc. 13-25 at 250-254; *see also* Doc. 13-26 at 16-20). On this record, the Court cannot conclude the challenged evidence rendered the trial unfair, and Ground 4 fails.

### F. Juror Misconduct (Ground 5)

Ground 5 raises a due process claim based on juror misconduct. Following trial, Juror Peterson contacted the state judge to report that other jurors ridiculed her and pressured her to reach a verdict during deliberations. (Doc. 12-8 at 29). She alleged she voted to convict because she understood the verdict had to unanimous, but she believed Petitioner was convicted because he was

black and refused to testify. (*Id.*). Juror Peterson also provided an affidavit to defense counsel, which also alleged: (1) Juror Williams said "Do you really want him to be walking on the streets? He's got other charges and won't be getting out of jail;" and (2) Juror Weldon slept at trial. (*Id.* at 38). After some investigation, Petitioner's counsel obtained an affidavit from Juror Perez, who also believed a unanimous verdict was required. (*Id.* at 42). Petitioner filed a motion for a new trial, but the state court denied the motion without holding a hearing. (*Id.* at 52).

After considering Ground 5, the OCCA found no error. (Doc. 12-4 at 13). The opinion concluded no hearing was required because Petitioner failed to file his motion within ten days after entry of the criminal judgment, as required by Oklahoma Crim. Rule. 2.1(A)(2). (*Id.*). The OCCA further found no clear and convincing evidence of misconduct, and noted that in any event, jurors are not permitted to impeach their verdicts." (*Id.* at 14).

The federal constitution guarantees "a tribunal both impartial and mentally competent to afford a hearing." *Warger v. Shauers*, 135 S. Ct. 521, 529 (2014) (quotations omitted). However, like Oklahoma law, federal law "prohibit[s] the admission of juror testimony to impeach a jury verdict." *Tanner v. United States*, 483 U.S. 107, 117 (1987). This includes situations involving illicit drug use, *Tanner*, 483 U.S. at 117, and undisclosed bias regarding the facts of the case, *Warger,* 135 S. Ct. at 529. As *Tanner* noted, "[a]llegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process." 483 U.S. 107, 120 (1987). An exception to the no-impeachment rule exists where external, prejudicial information is improperly brought to the jury's attention. *Wagner,* 135 S. Ct. at 529 (citing Fed. R. Evid. 606(b)).[4]

---

4      In 2017 - after briefing was complete in this case - the Supreme Court established a second exception

In light of clearly established federal law, the Court cannot find that the OCCA's ruling constitutes an "extreme malfunction in the state criminal justice system." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). Juror Peterson did not report the reference to Petitioner's "other charges,"[5] in her original letter to the state court, and in any event, the comment is too vague to conclude extra-record facts prejudiced the outcome at trial. *See, e.g., Marquez v. City of Albuquerque*, 399 F.3d 1216, 1223 (10th Cir. 2005) (On juror-misconduct claims, the inquiry is "whether they discussed specific extra-record *facts* relating to the defendant, and if they did, whether there was a significant possibility that the defendant was prejudiced thereby.") (emphasis in original). The Court is also not convinced the other alleged misconduct (*i.e.* a juror who sometimes slept), or the lack of hearing, rendered the trial fundamentally unfair. Habeas relief is therefore unavailable on Ground 5.

**G. Cumulative Error (Ground 7)**

Petitioner finally contends he suffered prejudice from the cumulative effect of all errors addressed in Grounds 1-6. (Doc. 8 at 36). The "[c]umulative error analysis [only] applies [in a habeas proceeding] where there are two or more actual errors." *Moore v. Reynolds*, 153 F.3d 1086,

---

to the no-impeachment rule for evidence of "racial animus [that] was a significant motiving factor in [the] finding of guilt." *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 867 (2017). However, habeas relief is only available based on federal law that was "clearly established at the time of the [state] adjudication." *Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (per curiam) (quotations omitted). The Court also notes that even if *Pena-Rodriguez* applied, it would not change the outcome in this case. The only evidence of racial bias appeared in Juror Peterson's letter to the state judge, where she wrote: "I believe they convicted [Petitioner] because he was black and didn't take the stand in his own defense." (Doc. 12-8 at 29). She did not provide any specific averments to support this statement or even raise the issue in her detailed, three-page affidavit. (*Id.* at 37-39). Therefore, the Court cannot disturb the verdict based on *Pena-Rodriguez*.

5 The exact question was: "Do you really want him to walking on the streets? He's got other charges and won't be getting out of jail." (Doc. 12-8 at 38).

1113 (10th Cir. 1998). "[I]t does not apply to the cumulative effect of non-errors." *Id.* Having found no error in Grounds 1 through 6, the Court rejects Petitioner's cumulative error claim.

In sum, the Court concludes Petitioner's conviction does not violate federal law. 28 U.S.C. § 2254(a). The Petition is therefore denied.

## III. Certificate of Appealability

Habeas Corpus Rule 11 requires "[t]he district court [to] . . . issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may only issue "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court rejects the merits of petitioner's constitutional claims, he must make this showing by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons discussed above, Petitioner has not made the requisite showing on any of his claims. The Court therefore denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The petition for a writ of habeas corpus (Doc. 1) is denied.
2. A certificate of appealability is denied.
3. A separate judgment will be entered herewith.

ORDERED this 17th day of September, 2019.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT